IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

EMMETT MADISON GRAHAM, JR.,

    Plaintiff,

v.                                       Civil Action No. 1:04CV43

HARLEY LAPPIN, Director Federal Bureau of Prisons;
B.A. BLEDSOE;
JANET BUNTS;
DORIS WILLIAMS; and
M. L. VELTRI,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pro se plaintiff Emmett Madison Graham, Jr. ("Graham"), an inmate at FCI-Gilmer, filed a complaint pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleging that the defendants provided him with inadequate medical treatment in violation of his right to be protected against cruel and unusual punishment under the Eighth Amendment of the United States Constitution ("Eighth Amendment"). He further alleges civil conspiracy, retaliation and violations of the Americans with Disabilities Act ("ADA") and requests leave to amend his complaint to add additional defendants to this action.

In accordance with Local Rule of Prisoner Litigation 83.09, the Court referred the matter to Magistrate Judge John S. Kaull,

**Graham v. Lappin, et al.**                                              **1:04CV43**

<u>**MEMORANDUM OPINION AND ORDER**</u>

who filed a Report and Recommendation recommending that Graham's motion to amend be granted-in-part and denied-in-part and that his complaint be dismissed as frivolous for failure to state a claim. Subsequently, Graham objected to the Magistrate's findings. For the reasons explained in the following discussion, the Court **AFFIRMS** the Magistrate's Report and Recommendation (dckt no. 9).

## I.  FACTUAL BACKGROUND

Graham is an inmate whose medical condition requires that he wear a pacemaker. He is currently confined at FCI-Gilmer and previously served parts of his sentence at USP Atlanta, FCI-Edgefield and FCI-Schuylkill.[1] Prior to his placement at FCI-Gilmer, Graham filed for a writ of mandamus in the United States District Court for the Middle District of Pennsylvania to request medical services for his pacemaker and hernaturia disk. That court referred the case to Magistrate Judge Malachy E. Mannion ("Magistrate Mannion"), who, on March 7, 2003, ordered that:

> the defendants supply this court with an affidavit and/or declaration from the appropriate medical treater of petitioner establishing that the pacemaker is continuing to be checked on a medically appropriate

---

[1]"In presenting [his] allegations, and in considering a dismissal pursuant to 28 U.S.C. § 1915(d), this Court will assume the veracity of all of the allegations and construe them in the light most favorable to plaintiff . . ." <u>Holsey v. Bass</u>, 519 F. Supp. 395, 397 (4th Cir. 1981).

2

> interval, and that the results of those tests continue to indicate that the pacemaker is running in 'excellent' condition. . . .The government is directed to supply this court with these affidavits and/or declarations, at least quarterly during the pendency of this action."

Subsequently, on December 18, 2003, Magistrate Mannion filed a Report and Recommendation that indicated that Graham's pacemaker had received monthly evaluations from December 2002 through June 2003, that the device operated within normal limits with no signs of malfunction, and that a cardiologist had examined Graham on April 2, 2003.

## A.  Graham's Arrival at FCI-Gilmer

Meanwhile, on July 16, 2003, Graham arrived at FCI-Gilmer, here in West Virginia, where he experienced chest pains, dizziness, fainting spells and could not get out of bed in the morning. He informed a Physician's Assistant of his condition and asked to see a cardiologist, but instead received an evaluation from Doris Williams ("Dr. Williams"), a doctor at the facility. Graham informed Dr. Williams that he had concerns regarding the age and setting of his pacemaker and also advised her that his chest pains, dizziness and back problems had grown worse. Graham states that this meeting with Dr. Williams, and around twenty subsequent visits to the medical department, provided him with no relief. However, a "Third Notice of Compliance" filed with Magistrate Mannion on

September 19, 2003, noted that on August 28, 2003, subsequent to Graham's transfer to FCI-Gilmer, Graham had received treatment from a cardiologist, had his pacemaker evaluated and had undergone an EMG. The record also indicates that Graham underwent an EMG on October 30, 2003.

### B. Graham's Request for a Handicapped Cell

In early November 2003, Graham requested that M.L. Veltri ("Veltri"), a Unit Manager at FCI-Gilmer, assign him to a handicapped cell. Veltri denied his request, which prompted Graham, in accordance with the BOP's administrative remedy procedure ("ARP"), to file a grievance accusing Veltri of discrimination. Correctional Srvs Corp. v. Malesko, 534 U.S. 61 (2001) (stating that the ARP is a process through which inmates may seek formal review of an issue which relates to any aspect of their confinement).

The ARP requires that a prisoner attempt to reach an informal resolution with prison staff before filing a written complaint with the warden. If, after a complaint is filed, the warden's response is insufficient, the prisoner may appeal to the regional director of the BOP. Finally, if the prisoner is dissatisfied with the regional director's response, he may appeal to the office of the

4

General Counsel. 28 C.F.R. § 542; <u>Gibbs v. Bureau of Prison Office, FCI</u>, 986 F.Supp. 941, 943 (D. Md. 1997).

According to Graham, in retaliation for bringing this ARP against her, Veltri placed him in a Special Housing Unit ("SHU") from November 5, 2003 until November 13, 2003. Consequently, on November 16, 2003, Graham filed another grievance against her. The BOP, however, advised him that he had been placed in administrative segregation "due to a possible threat against [him] by black inmates in the general population at FCI-Gilmer." Graham appealed to the warden, who responded that staff had determined "that the need to place you temporarily in Administrative Detention was warranted to ensure the orderly running of the institution."

Graham unsuccessfully appealed this decision to the Regional Office, which advised Graham that he had been "placed in Administrative Detention pending investigation into a violation of Bureau regulations." The plaintiff made a final appeal to the Office of General Counsel; however, the record before the Court does not contain that office's final response.

Meanwhile, on November 7, 2003, Warden B.A. Bledsoe ("Bledsoe") denied Graham's initial request for relief against Veltri for denying him a handicapped cell. Graham appealed the warden's decision to the Regional Office on November 16, 2003, and,

on January 12, 2004, appealed to the Office of General Counsel. On February 11, 2004, Harrell Watts, the Administrator of National Inmate Appeals, filed a response stating that Graham's medical conditions did not warrant placement in a handicapped cell and that placement in a lower bunk would be sufficient.

## C.   Graham's Letters to Ashcroft and Lappin

While prosecuting his several administrative appeals, Graham wrote letters to John Ashcroft ("Ashcroft"), then United States Attorney General, and Harley Lappin ("Lappin"), Director of the United States Federal Bureau of Prisons on November 24, 2003, regarding the condition of his pacemaker. In accordance with the ARP, Lappin referred Graham's letter to Bledsoe and, on December 19, 2003, Bledsoe filed a response which indicated that monthly telephone evaluations of Graham's pacemaker had demonstrated that the device continued to function within normal limits. Bledsoe also noted, however, that the clinical director at FCI-Gilmer had concerns about the longevity of the device.[2]

Ironically, on December 17, 2003, two days prior to the date on which Bledsoe filed his response indicating there were concerns about the longevity of Graham's pacemaker, a representative from

---

[2] There is no evidence that Graham appealed the warden's response.

St. Jude Medical Center examined Graham and found that the battery on his pacemaker needed to be replaced immediately. According to Graham, Janet Bunts ("Bunts"), the Health Services Administrator at FCI-Gilmer, promised to replace the battery but failed to do so. According to the record, however, FCI-Gilmer contacted a cardiologist to have the battery changed as soon as possible.

**D.    Graham's Hospital Visit**

On December 20, 2003, Graham lost consciousness and had to be taken to the hospital in Weston, West Virginia, where he received a new pacemaker. On the way to the hospital, a member of the prison staff dropped Graham from an ironing board that the prison medical unit was using in lieu of a stretcher to transport him.

Although Graham sustained a back injury from the fall, his attempts to obtain treatment went unattended until January 21, 2004, when Dr. Williams, the prison physician, gave him a back brace and ordered x-rays. He asserts that his back continues to trouble him and that Bunts has ignored his requests to see a qualified physician or a neurosurgeon. According to the record, a LumbarSpineCT scan taken of Graham's back on February 23, 2004, revealed "no significant abnormalities."

### E. Graham's Prayer for Relief

As a result of these incidents, Graham filed a § 1983 claim with this Court alleging that Dr. Williams acted in an "intentional, malicious, reckless" manner, subjected him "to unnecessary and wanton infliction of pain and suffering and cruel and unusual punishment" and conspired with Bunts and others, including Bledsoe, Kevin Wendt ("Wendt"), the current warden at FCI-Gilmer, and Lappin, to deny him appropriate medical treatment. He further claims that Bledsoe, Wendt and Lappin violated the Eighth Amendment by knowingly failing to ensure that he receive adequate medical treatment.

Finally, Graham's petition alleges that Veltri violated the ADA when she denied him a handicapped cell after learning of his back problems, dizzy spells, and heart trouble and violated the Eighth Amendment when she placed him in the SHU in retaliation for bringing an administrative remedy against her.

Graham has also filed a motion to amend his complaint to add similar allegations against additional defendants to this action. The Court will first determine whether leave to amend should be granted.

**Graham v. Lappin, et al.**                                    **1:04CV43**

## MEMORANDUM OPINION AND ORDER

### II. MOTION TO AMEND

Graham seeks to amend his complaint to allege Eighth Amendment violations committed by Warden Wendt, Jonathan G. Dewald, a physician at the Wilson County Detention Center, Katarina S. Dewald, a nurse at the Wilson County Detention Center, Ms. L. Martin, Hospital Administrator at USP Atlanta, Edwin Lopez, Clinical Director at USP Atlanta, Ms. L. Rosario, Hospital Administrator at FCI-Edgefield, J. Serrano and D.W. Cundy, doctors at FCI-Edgefield, Mr. Joudor, Unit Manager at FCI-Edgefield, A.W. Richards, Ms. A Walters, Lieutenant Barbarino, and Officer C. James, employees at FCI-Edgefield, K. Joy, Unit Manager at FCI-Edgefield, Ms. Wanda Harrison, Case Coordinator at FCI-Edgefield, Willie Scott, Warden at USP Atlanta, Dan L. Dove, an employee at FCI-Schuylkill, John Nash, Warden at FCI-Schuylkill, Mr. S. Iwugwu, Hospital Administrator at FCI-Schuylkill, and Russell Hendershot, a Doctor of Osteopathy in Berwick, Pennsylvania. As the following discussion demonstrates, however, his motion can only be granted with respect to Wendt because this Court lacks personal jurisdiction over the other named parties.

### A. Standard of Law

Federal Rule of Civil Procedure 15(a) provides that "a party may amend the party's pleading once as a matter of course at any

time before a responsive pleading is served . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." A district court may deny a motion to amend, however, if the amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962). See also Sandcrest Outpatient Services, P.A. v. Cumberland County Hosp. System, Inc., 853 F.2d 1139, 1148 (4th Cir. 1988). "Leave to amend . . . should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986). An action may be classified as "frivolous" if a waivable affirmative defense, such as lack of personal jurisdiction, is "clear from the face of the complaint." Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 959-60 (4th Cir. 1995). See also Hall v. Herman, 896 F. Supp. 588 (N.D. W. Va. 1995).

**B.   Personal Jurisdiction**

"Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." Ruhrgas Ag v. Marathon Oil Co., 526 U.S. 574, 577 (1999). Although

a district court has subject matter jurisdiction over all "civil actions arising under the Constitution, laws, or treaties of the United States," such as Hollis' claims under the Eighth Amendment and the FTCA, personal jurisdiction must be authorized by state law and must also comply with the constitutional requirements of due process. 28 U.S.C. § 1331; Fed. R. Civ. P. 4(K)(1)(A); International Shoe v. Washington, 326 U.S. 310, 316 (1945); Carefirst of Maryland v. Carefirst Pregnancy Ctrs., 334 F.3d 390 (4th Cir. 2003). International Shoe v. Washington, 326 U.S. 310, 316 (1945); Griffith & Coe Adver., Inc. v. Farmers & Merchs. Bank & Trust, 215 W. Va. 428, 431 (2004).

Thus, the Court's analysis of whether personal jurisdiction exists over the additional defendants Graham seeks to sue is a two-step process. The first step requires the Court to determine whether a defendant's actions satisfy the personal jurisdiction statutes set forth in Section 56-3-33 of the West Virginia Code, and the second step requires a determination of whether a defendant's contacts with West Virginia satisfy federal due process. See Griffith & Coe, 215 W. Va. at 431. When a district court rules on personal jurisdiction without holding an evidentiary hearing, it must view the facts in the light most favorable to the

plaintiff to determine whether the plaintiff has made a prima facie showing. Mitrano v. Hawes, 377 F.3d 402, 406 (4th Cir. 2004).

### 1. The West Virginia Long-Arm Statute

Under section 56-3-33 of the West Virginia Code, jurisdiction is proper if a defendant is:

> (1) Transacting any business in this state;
> (2) Contracting to supply services or things in this state;
> (3) Causing tortious injury by an act or omission in this state;
> (4) Causing tortious injury in this state by an act or omission outside this state if he or she regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
> (5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume or be affected by the goods in this state: Provided, that he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
> (6) Having an interest in, using or possessing real property in this state; or
> (7) Contracting to insure any person, property or risk located within this state at the time of contracting.

### 2. Due Process Clause

The Due Process Clause of the United States Constitution requires that a defendant have such purposeful minimum contacts with the forum state that requiring him to appear there does not "offend traditional notions of fair play and substantial justice." In re Celotex Corp., 124 F.3d 619, 627 (4th Cir. 1997). Such jurisdiction can be specific or general.

In determining whether specific jurisdiction exists, the Court looks at "'(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" Mitrano, 377 F.3d at 406-07 (quoting A.L.S. Scan, Inc. v. Digital Srvc. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)). General jurisdiction, however, is based on a defendant's "continuous and systematic" contacts with West Virginia. A.L.S. Scan, Inc., 293 F.3d at 711-712.

### 3. Discussion

Graham alleges that Jonathan G. Dewald, Katarina S. Dewald, L. Martin, Edwin Lopez, L. Rosario, J. Serrano, D.W. Cundey, Mr. Joudor, A.W. Richards, K. Joy, A. Walters, Lieutenant Barbarino,

**MEMORANDUM OPINION AND ORDER**

Officer C. James, Wanda Harrison, Willie Scott, Dan L. Dove, John Nash, S. Iwugwu, and Dr. Russell Hendershot committed acts which violated his Eighth Amendment rights. He does not, however, allege that any of these acts occurred within the state of West Virginia or caused harm within the state. Further, he does not allege that these defendants had any other contact with West Virginia that would provide a basis for jurisdiction. In point of fact, all of the acts attributed to these defendants occurred solely in Georgia, South Carolina or Pennsylvania. Thus, because it is clear on the face of the complaint that the Court lacks personal jurisdiction over Jonathan G. Dewald, Katarina S. Dewald, L. Martin, Edwin Lopez, L. Rosario, J. Serran, D.W. Cundey, Mr. Joudor, A.W. Richards, K. Joy, A. Walters, Lieutenant Barbarino, Officer C. James, Wanda Harrison, Willie Scott, Dan L. Dove, John Nash, S. Iwugwu and Russell Hendershot, the Court **DENIES** as futile Graham's motion to add them as parties to this action and **GRANTS** only Graham's motion to add Warden Wendt as a party to this action.[3]

---

[3] The Court notes that its analysis would be identical under 28 U.S.C. § 1915(e)(II)(B), which grants district courts the authority to dismiss frivolous in forma pauperis actions.

## MEMORANDUM OPINION AND ORDER

### III. LEGAL ANALYSIS

At bottom, Graham argues that the defendants violated the Eighth Amendment and the ADA by ignoring his requests for medical attention and accommodations regarding his pacemaker and back injuries. Nonetheless, Graham's claims must be **DISMISSED** for failure to exhaust administrative remedies and failure to state a claim.

**A.     Failure to Exhaust Remedies**

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing an action "with respect to prison conditions" under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. 42 U.S.C. §1997e; Booth v. Churner, 532 U.S. 731, 741 (2001). If the record does not demonstrate on its face that the prisoner exhausted such remedies, his complaint must be dismissed. 42 U.S.C. §1997e(a); Brown v. Toombs, 139 F.3d 1102 (6th Cir. 1998). A district court must enforce this requirement sua sponte if it is not raised by the defendant. Id.

Although the phrase "with respect to prison conditions" is not defined by statute, the United States Supreme Court has determined that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or

some other wrong." Porter v. Nussle, 534 U.S. 516 (2002). Exhaustion is also required when the relief the prisoner seeks is unavailable. Booth, 532 U.S. at 741.

All of Graham's allegations concern "prison conditions" within the meaning of the PLRA; however, on the face of the record, Graham has only exhausted his administrative remedies with respect to his ADA claim. Accordingly, the remainder of his allegations are **DISMISSED WITHOUT PREJUDICE**.

B.  **Failure to State an ADA Claim**

Graham's ADA claim, on the other hand must be **DISMISSED WITH PREJUDICE** for failure to state a claim.

A district court has the authority to dismiss an in forma pauperis action that is "frivolous or malicious" or "fails to state a claim on which relief can be granted." 28 U.S.C. § 1915(e)(II)(B). Further, "a district court is not bound to 'accept without question the truth of the plaintiff's allegations' as it might be when considering a motion under Rule 12(b)(6) . . . [but is permitted] to apply common sense, reject the fantastic, and rebut alleged matters with judicially noticeable facts." Id. at 954 (citing Denton v. Hernandez, 504 U.S. 25, 32-33 (1992)).

Graham alleges that the defendants violated the ADA by failing to place him in a handicapped cell. However, Title II and III of

the ADA do not apply to the federal government. <u>Cellular Phone Taskforce v. FCC</u>, 217 F.3d 72, 73 (2d Cir. 2000) (per curiam) ("Title II of the ADA is not applicable to the federal government."); <u>Crowder v. True</u>, 1993 WL 532455 (N.D. Ill.1993) (Title III). Section 12132 of Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The term "public entity," however, only applies to state or local governments, agencies or instrumentalities of state or local governments, and commuter authorities. 42 U.S.C. § 12131(1). Similarly, Title III provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182(a). Graham's ADA claim therefore is frivolous because he has sued federal actors who are immune from suit under the ADA.

### IV. CONCLUSION

Because Graham may amend his complaint once as a matter of course at any time before a responsive pleading is served, he may add Warden Wendt as a defendant in this action; he may not, however, amend his complaint to add Jonathan G. Dewald, Katarina S. Dewald, L. Martin, Edwin Lopez, L. Rosario, J. Serrano, D.W. Cundey, Mr. Joudor, A.W. Richards, K. Joy, A. Walters, Lieutenant Barbarino, Officer C. James, Wanda Harrison, Willie Scott, Dan L. Dove, John Nash, S. Iwugwu, and Dr. Russell Hendershot because it is clear on the face of the complaint that this Court lacks personal jurisdiction over them.

Further, Graham has failed to state a valid claim under the ADA and has failed to exhaust his administrative remedies with regard to his other allegations. Accordingly, this Court **AFFIRMS** the Magistrate's Report and Recommendation (dckt no. 9), and **ORDERS** that Graham's motion to amend be **GRANTED-IN-PART** to name Warden Wendt and **DENIED-IN-PART** (dckt no. 8), that his ADA claim be **DISMISSED WITH PREJUDICE** and that the remainder of his allegations be **DISMISSED WITHOUT PREJUDICE** because he has failed to exhaust his administrative remedies (dckt no. 1).

All other motions are **DENIED AS MOOT** in light of the Court's ruling.

**Graham v. Lappin, et al.**                                    1:04CV43

MEMORANDUM OPINION AND ORDER

It is so **ORDERED**.

The Clerk is directed to mail a certified copy of this Order to the petitioner, to counsel of record, and to Magistrate Judge Kaull.

DATED: August 9, 2005

IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE